UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FOUNDERS INSURANCE COMPANY,
an Illinois corporation,

    Plaintiff,

vs.

                                    Case No. 8:10-cv-02286-EAK-AEP

JESUS CORTES-GARCIA, as
Personal Representative of the
ESTATE OF JOSE CORTES-GARCIA,
and 802 EAST WHITING STREET, INC.,
a Florida corporation,

    Defendants.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court upon consideration of a motion for summary judgment filed by Plaintiff, Founders Insurance Company ("Founders"), a motion for summary judgment filed by Defendant, Jesus Cortes-Garcia as Personal Representative of the Estate of Jose Cortes-Garcia ("Estate"), a motion for partial summary judgment filed by Defendant, 802 East Whiting Street, Inc. ("802 East Whiting"), and the responses filed by all parties. For the reasons set forth below, Founders' motion for summary judgment is GRANTED in part and DENIED in part, the Estate's motion for summary judgment is GRANTED in part and DENIED in part, and 802 East Whiting's motion for partial summary judgment is GRANTED.

**I. Background**

In its Second Amended Complaint (Doc. 31), Founders seeks a declaratory judgment on two counts. Count I seeks a declaratory judgment that Founders has no duty to defend or indemnify the insured, 802 East Whiting, under the Commercial General Liability provisions of

the insurance policy, and Count II seeks a declaratory judgment that Founders has no duty to defend or indemnify 802 East Whiting under the Liquor Liability Coverage provisions of the insurance policy. The Estate asserts a counterclaim (Doc. 28) for a declaratory judgment that Founders has a duty to provide coverage under the Medical Payments provision of the insurance policy.

In an underlying state action ("Underlying Action"), Founders is defending 802 East Whiting under a reservation of rights in Case No. 09-CA-027901 which was filed in Hillsborough County Circuit Court by the estate of Jose Cortes-Garcia. Founders' motion for summary judgment (Doc. 39), the Estate's motion for summary judgment (Doc. 49), and 802 East Whiting's motion for partial summary judgment (Doc. 51) are now before the Court.

**II. Standard of Review**

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are . . . irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. But, "[i]f the evidence is merely colorable . . . or is not

significantly probative . . . summary judgment may be granted." *Id.* at 249–50. "[T]he interpretation of an insurance contract is a question of law which may be determined on summary judgment." *Talat Enters., Inc. v. Aetna Cas. & Sur. Co.*, 952 F. Supp. 773, 776 (M.D. Fla. 1996). The following facts are accepted as true in resolving the pending motions.

### III. Statement of Facts

1. Founders issued 802 East Whiting, d/b/a Club Underground, liability insurance under policy number CPFL000042 ("the Policy") with an effective date of October 26, 2007 to October 26, 2008. (Doc. 31-1).

2. 802 East Whiting operated a bar / nightclub, where on the night of September 26, 2008, an altercation broke out among patrons of the bar. (Doc. 39; Doc. 51).

3. During the altercation, a patron picked up and threw a chair which hit Jose Cortes-Garcia in the head, resulting in Mr. Cortes-Garcia's death. (Doc. 39; Doc. 39-1, Underlying Action; Doc. 49; Doc. 51; Doc. 52 Ramirez Dep. 67).

4. Enoc C. Perez pleaded guilty to, and was adjudicated guilty of, manslaughter with a weapon for the death of Mr. Cortes-Garcia. (Doc. 39-2).

5. On the night of the altercation, 802 East Whiting sold and furnished alcohol to the patrons involved in the altercation. (Doc. 52 Ramirez Dep. 21-22; Doc. 51-2 Perez Statement 6, 8).

6. The Underlying Action alleges that Mr. Perez and others involved in the altercation were intoxicated as a result of 802 East Whiting selling and furnishing them with alcoholic beverages. (Doc. 39-1).

7. The following Commercial General Liability Coverage provisions of the Policy at issue are relevant (Doc. 31-1):

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

SECTION I – COVERAGES
COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply...

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory".

**SECTION V – DEFINITIONS**

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.

**FLORIDA CGL MANDATORY ENDORSEMENT – ADDITIONAL EXCLUSIONS AND PROVISIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusions are added to paragraph **2. Exclusions** of SECTION I – **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** . . .

   **9. Assault and/or Battery/Negligent Hiring**
   "Bodily injury", "property damage", or "personal and advertising injury" arising from:

    (a)    assault and/or battery committed by any insured, any "employee" of an insured, or any other person;

    (b)    The failure to suppress or prevent assault and/or battery by any person in subparagraph 9.(a) above;

    (c)    The selling, serving or furnishing of alcoholic beverages which result in an assault and/or battery; or

    (d)    The negligent:
        (1)    Employment;
        (2)    Investigation;
        (3)    Supervision;
        (4)    Reporting to the proper authorities, or the failure to so report; or
        (5)    Retention

of or by a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by subparagraphs 9.(a) through 9.(c) above.

8.    The following Liquor Liability Coverage and Assault and/or Battery Coverage Buy-Back provisions of the Policy at issue are relevant (Doc. 31-1):

**FLORIDA LIQUOR LIABILITY COVERAGE PART**

    **SECTION I – LIQUOR LIABILITY COVERAGE**

    1.    <u>Insuring Agreement</u>

- We will pay those sums that an "insured" becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on an "insured" by reason of the selling, serving, or furnishing of any alcoholic beverage; and
- We will defend an "insured" against any "suit" seeking those damages.

    2.    <u>Exclusions to Coverage</u>

This insurance does not apply to:

    k.    **Assault and/or Battery**
"Injury" arising from:
(1) assault and/or battery committed by any "insured", any "employee" of an "insured", or any other person;
(2) The failure to suppress or prevent assault and/or battery by any person in subparagraph k.(1) above;
(3) The selling, serving or furnishing of alcoholic beverages which results in an assault and/or battery; or

5

>   (4) The negligent:
>   (a) Employment;
>   (b) Investigation;
>   (c) Supervision;
>   (d) Reporting to the proper authorities, or failure to so report; or
>   (e) Retention
>
>   by a person for whom any "insured" is or ever was legally responsible and whose conduct would be excluded by subparagraphs k.(1) through k.(3) above.

**ASSAULT AND/OR BATTERY COVERAGE BUY-BACK**

This endorsement modifies insurance provided under the following:

FLORIDA LIQUOR LIABILITY COVERAGE PART

In consideration of the additional premium charged for this endorsement, subparagraph k. Assault and/or Battery of **SECTION I – LIQUOR LIABILITY COVERAGE**, paragraph 2. Exclusions to Coverage, shall not apply and coverage for any "injury" that otherwise would be excluded by the Assault and/or Battery exclusion referenced herein shall be provided subject to the Limits of Insurance shown in the Declarations for this endorsement. The Combined Single Limit and Aggregate Limit applicable to the coverage provided by this endorsement shall be the same and shall be shown as a single limit in the Declarations on the line on which this endorsement is listed. Any coverage provided under the Limits of Insurance shown in the Declarations for this endorsement shall be subject to the Aggregate Limit applicable to the policy.

9.   The following Medical Payments provisions of the Policy are relevant to the Estate's counterclaim against Founders (Doc. 31-1):

**COVERAGE C MEDICAL PAYMENTS**

>   **1. Insuring Agreement**
>
>   a.   We will pay medical expenses as described below for "bodily injury" caused by an accident:
>   . . .
>
>   **2. Exclusions**
>
>   We will not pay expenses for "bodily injury":
>   . . .
>
>   g.   **Coverage A Exclusions**

6

Excluded under Coverage A.

**IV. Discussion**

The basis of jurisdiction is diversity. Founders, an Illinois corporation, issued the Policy to 802 East Whiting, a Florida corporation, for a business located in Florida. The Court therefore applies Florida law to the substantive issues in this case.

**Controlling Principles**

Under Florida law, the issue of an insurer's duty to defend a lawsuit against its insured is governed by the terms of the policy and the allegations of the complaint. *See Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So. 2d 533, 536 (Fla. 1977) ("The allegations of the complaint govern the duty of the insurer to defend."); *McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 758 So. 2d 692, 695 (Fla. 4th DCA 2000) ("[A]n insurer has no duty to defend a suit against an insured if the complaint on its face alleges a state of facts that fails to bring the case within the coverage of the policy.") (quoting *Marr Invs., Inc. v. Greco*, 621 So. 2d 447, 449 (Fla. 4th DCA 1993)); *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 813 (Fla. 1st DCA 1985) ("The rule is firmly established in Florida that a liability insurer's obligation to defend a claim made against its insured must be determined from the allegations in the complaint.") This rule is often called the "eight corners rule," a reference to the four corners of the policy and the four corners of the complaint. *See Colony Ins. Co. v. Barnes*, 410 F. Supp. 2d 1137 (N.D. Fla. 2005). If the complaint alleges any claim that, if proven, might come within the insurer's indemnity obligation, the insurer must defend the entire action. *Id.* at 1139.

The construction of an insurance policy is a question of law for the court. *Jones v. Utica Mutual Ins. Co.*, 463 So. 2d 1153, 1157 (Fla. 1985); *Roberts v. Florida Lawyers Mutual Ins. Co.*, 839 So. 2d 843, 845 (Fla. 4th DCA 2003). When construing insurance policies, courts are to

read the policy as a whole and attempt to give every provision its full meaning and operative effect. *See Auto–Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). Any ambiguities in an insurance policy are to be interpreted liberally and in favor of the insured and strictly against the insurer. *See Flores v. Allstate Ins. Co.*, 819 So. 2d 740, 744 (Fla. 2002); *Anderson*, 756 So. 2d at 34; *McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 758 So. 2d 692, 694–95 (Fla. 4th DCA 1999). A policy is ambiguous when the language is subject to "more than one reasonable interpretation, one providing coverage and the [sic] another limiting coverage. . ." *Anderson*, 756 So. 2d at 34. Under Florida law, an insured bears the burden of proving that a claim is covered within an insurance policy. *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997) (internal citations omitted). The burden of proving an exclusion to coverage is, however, on the insurer. *Id.*

"Because an insurer's duty to indemnify is dependent upon the outcome of a case, any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim." *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001). However, as the duty to defend is broader than the duty to indemnify, if a court determines there is no duty to defend, as a matter of law there cannot be a duty to indemnify. *WellCare of Florida, Inc. v. American Int'l Specialty Lines Ins. Co.*, 16 So. 3d 904, 906 (Fla. 2d DCA 2009) ("[T]he duty to indemnify is narrower than the duty to defend and thus cannot exist if there is not duty to defend.") (citing *Aetna Ins. Co. v. Borrell–Bigby Elec. Co.*, 541 So. 2d 139, 141 (Fla. 2d DCA 1989) and *Fun Spree Vacations, Inc. v. Orion Ins. Co.*, 659 So. 2d 419, 421 (Fla. 3d DCA 1995)).

A. Count I – Duty to Defend and Duty to Indemnify under the Commercial General Liability Provisions of the Policy

Founders argues that Mr. Cortes-Garcia's death arose from an assault and battery and, consequently, Founders has no duty to defend or indemnify 802 East Whiting against the claims of the Estate. The Estate argues that Mr. Cortes-Garcia's death did not arise from an assault or battery, but instead from an act of negligence by 802 East Whiting resulting in coverage under the Policy's Commercial General Liability provisions.

**The Policy at Issue**

"Occurrence" is defined within the Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Where the term "accident" is not defined in a liability policy, the Florida Supreme Court has construed the term to include "not only 'accidental events,' but also injuries or damage neither expected nor intended from the standpoint of the insured." *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1076 (Fla. 1998). Here, Mr. Cortes-Garcia's death falls within the definition of an accident because it was an unexpected injury and unintended from the standpoint of the insured, 802 East Whiting.

The Policy's Commercial General Liability provisions contain an exclusion for bodily injury arising from an assault and/or battery, but neither "assault" nor "battery" is defined within the Policy. Nonetheless, the lack of an operative definition of a word or phrase does not mean that an insurance policy is ambiguous. *Container Corp. of Am. v. Maryland Cas. Co.*, 707 So. 2d 733, 736 (Fla. 1998). Courts should apply the plain meaning of a word or phrase used within an insurance policy when a definition is not given. *Southeastern Fire Ins. Co. v. Lehrman*, 443 So. 2d 408, 409 (Fla. 4th DCA 1984). "Absent a definition of a term in a document or policy, [courts] may utilize the plain and generally accepted meaning of the term." *Guideone Elite Ins.*

9

*Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1327 n. 6 (11th Cir. 2005) (quoting *Bohrer v. Church Mut. Ins. Co.*, 965 P.2d 1258, 1263 (Colo.1998)). In analyzing assault and battery where the policy does not include a definition, the Court looks to how Florida law defines those terms. *Colony Ins. Co.*, 410 F. Supp. 2d at 1141.

Assault has been defined as "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear of such violence being done." *Wilson v. State*, 265 So. 2d 411, 413 (Fla. 4th DCA 1972). As defined by Florida law, the elements of assault include an intentional threat by an act, coupled with an apparent ability to carry out the threat, that creates a fear of imminent violence; the required intent is to do the act, not the intent to do violence to the victim. *Cambell v. State*, 37 So. 3d 948 (Fla. 5th DCA 2010). The element of intent in civil assault does not necessarily involve the subjective intent to do harm. *See Spivey v. Battaglia*, 258 So. 2d 815 (Fla. 1972).

A battery is the infliction of a harmful or offensive contact upon another with the intent to cause such contact or apprehension that such contact is imminent. *Quilling v. Price*, 894 So. 2d 1061, 1063 (Fla. 5th DCA 2005); *Paul v. Holbrook*, 696 So. 2d 1311, 1312 (Fla. 5th DCA 1997). No evidence of an intention to cause harm is necessary. *Paul*, at 1312. The intent required is to do the act, not the resultant harm. *Geovera Specialty Ins. Co. v. Hutchins*, Case No. 8:09-cv-1973-T-17EAJ, 2011 WL 6444609, *6 (M.D. Fla. 2011).

Under Florida law, the phrase "arising out of" has been held to be unambiguous, and is equivalent to the terms "originating from," "having origin in," "growing out of," "flowing from," "incident to" or "having connection with," but does not mean proximate cause. *See Taurus Holdings, Inc. v. U.S.F. & G. Co.*, 913 So. 2d 528 (Fla. 2005). Florida courts have construed

assault and battery exclusions to preclude acts of negligence arising from an assault or battery. *See, e.g., Century Sur. Co. v. Seductions, LLC*, 609 F. Supp. 2d 1273, 1277 (S.D. Fla. 2009) (citing *Taurus Holdings*, 913 So.2d at 539–40), *affirmed*, 349 Fed. Appx. 455 (11th Cir.) (Unpublished); *Perrine Food Retailers, Inc. v. Odyssey Re (London) Ltd.*, 721 So. 2d 402, 404 (Fla. 3d DCA 1998) (holding that negligence claims against store owner for failing to maintain premises or provide adequate security arose out of an assault and battery where patron was robbed at knife point and stabbed, ultimately triggering the policy's assault and battery exclusion); *Miami Beach Entm't, Inc. v. First Oak Brook Corp. Syndicate*, 682 So. 2d 161, 162 (Fla. 3d DCA 1996) (holding summary judgment based upon policy exclusion proper where a claim based on negligence arose out of assault and battery).

The Underlying Action alleges that 802 East Whiting was negligent in selling, serving, and furnishing alcoholic beverages to drunken patrons, and, as a result of the patrons' intoxication, they became involved in a fight. (Doc. 39-1, par. 11, 12, 14). One of these patrons "accidentally threw a chair in the direction of [Mr. Cortes-Garcia]." (Doc. 39-1, par. 14). The chair struck Mr. Cortes-Garcia in the head, causing a subdural brain hemorrhage, and Mr. Cortes-Garcia died as a result of his injuries. (Doc. 39-1, par. 18, 19). While the Underlying Action maintains that Mr. Cortes-Garcia's injuries were the result of 802 East Whiting's negligence and not the result of intentional acts, the argument is unconvincing. "A duty to defend cannot be triggered merely by labeling an intentional act 'negligent.'" *Hutchins*, 2011 WL 6444609 at *6. Where the facts alleged establish intentional conduct, but the claim asserts negligence, the negligence label should be disregarded. *See, e.g., Aetna Cas. & Sur. Co. v. Miller*, 550 So. 2d 29 (Fla. 3d DCA 1989); *Cabezas v. Fla. Farm Bureau Cas. Ins. Co.*, 830 So. 2d 156 (Fla. 3d DCA 2002).

Although the Underlying Action indicates that the perpetrator "accidentally" threw a chair, it is clear that the perpetrator intended to carry out his actions – to physically pick up and to throw the chair in a bar full of other patrons[1] – and that he had an apparent ability to do so. The perpetrator carried out those actions, and the record demonstrates those actions created a well-founded fear that the perpetrator had the intent to do violence. Specifically, when the perpetrator lifted up the chair and threw it, other patrons ducked out of the way before the chair hit Mr. Cortes-Garcia. (Doc. 52, Ramirez Dep. 29). Because an objective, reasonable person standard of apprehension of harmful contact is used to determine whether an assault occurred, *S.P.M. v. State*, 66 So. 3d 317, 319 (Fla. 2d DCA 2011), the facts before the Court demonstrate that Mr. Cortes-Garcia was assaulted. Additionally, the perpetrator's actions constituted a battery because the perpetrator intended to, and did, pick up and throw the chair, which inflicted a harmful contact upon Mr. Cortes-Garcia.

There cannot be a duty to defend where the allegations of the insured fall within a policy exclusion. *Hatmaker v. Liberty Mut. Fire Ins. Co.*, 308 F. Supp. 2d 1308, 1316 (M.D. Fla. 2004). Here, Mr. Cortes-Garcia's death is a "bodily injury" "arising from" an "assault and/or battery" "committed by any insured, any 'employee' of an insured, *or any other person.*" (emphasis added) (Doc. 31-1, Florida CGL Mandatory Endorsement – Additional Exclusions and Provisions A.9.(a)). The factual allegations before the Court are sufficient to establish that an assault and battery was committed by a patron of 802 East Whiting against Mr. Cortes-Garcia, which led to Mr. Cortes-Garcia's death. According to the Policy, Founders has no duty to defend the Underlying Action based on the Assault and/or Battery/Negligent Hiring exclusion of

---

[1] *See* Doc. 40 Dieppa Dep. 5; Doc. 42 Hernandez Dep. 5, 7; Doc. 43 Garcia Dep. 6.

the Commercial General Liability provisions. Where there is no duty to defend, there is no duty to indemnify.

This Court finds that Founders has no duty to either defend or indemnify 802 East Whiting under the Commercial General Liability provisions because of the exclusionary endorsement for assault and/or battery. Accordingly, this Court grants summary judgment to Founders as to Count I of its Second Amended Complaint, and denies the Estate's motion for summary judgment regarding the Commercial General Liability provisions of the Policy.

**B. Count II – Duty to Defend and Duty to Indemnify under the Liquor Liability Coverage Provisions of the Policy**

Founders argues that, although Mr. Cortes-Garcia's death arose from an assault and battery, the Assault and/or Battery Coverage Buy-Back endorsement to the Liquor Liability Coverage provisions does not apply because 802 East Whiting is statutorily immune from liability for selling, serving, or furnishing alcoholic beverages. Therefore, Founders argues, it has no duty to defend or indemnify the Underlying Action. The Estate and 802 East Whiting maintain that Founders has a duty to defend the Underlying Action under the Liquor Liability Coverage provisions of the Policy.

**The Policy at Issue**

802 East Whiting argues that Founders has a duty to defend the Underlying Action under the Assault and/or Battery Coverage Buy-Back endorsement (the "Buy-Back") to the Liquor Liability Coverage provisions. Section I of the Liquor Liability Coverage provisions provides that Founders will pay those sums that 802 East Whiting becomes legally obligated to pay if liability is imposed "by reason of the selling, serving, or furnishing of any alcoholic beverage," and Founders will defend 802 East Whiting against any suit seeking such damages. (Doc. 31-1). Although this provision contains an Assault and/or Battery exclusion similar to the exclusion

found in the Commercial General Liability provisions, 802 East Whiting purchased additional coverage under the same Policy in the form of the Buy-Back. The Buy-Back provides "coverage for any 'injury' that otherwise would be excluded by the Assault and/or Battery exclusion" of the Liquor Liability Coverage provisions, and coverage "shall be provided subject to the Limits of Insurance shown in the Declaration for this endorsement." (Doc. 31-1). Under the Policy, the applicable Limit of Insurance for the Buy-Back is $300,000.00. (Doc. 31-1, Liquor Liability Amended Declaration).

The Underlying Action alleges that 802 East Whiting was negligent in selling, serving, and furnishing alcoholic beverages to patrons who became intoxicated in the nightclub and became involved in a fight that led to Mr. Cortes-Garcia's injuries. (Doc. 39-1, par. 11, 14). Based on the plain language of the Policy and the facts alleged in the Underlying Action, coverage exists under the Buy Back to the Liquor Liability Coverage provisions. Founders' argument that it has no duty to defend the Underlying Action because 802 East Whiting will be immune from liability under section 768.125, Florida Statutes, is unconvincing. Any defenses brought by 802 East Whiting against the Estate's claims in the Underlying Action are for the state court to consider.

Consequently, Founders has a duty to defend the Underlying Action under the Buy-Back endorsement of the Policy's Liquor Liability Coverage provisions. A determination of Founders' duty to indemnify the Underlying Action under the Buy Back endorsement cannot be made at this time without the findings of the state court, and, therefore, is premature.

Accordingly, this Court grants partial summary judgment to 802 East Whiting and grants summary judgment, in part, to the Estate. Founders' motion for summary judgment as to Count II of its Second Amended Complaint is denied.

### C. The Estate's Counterclaim for Medical Payments Coverage under the Policy

Founders seeks summary judgment on the Estate's counterclaim for Medical Payments coverage under the Policy. Because the Assault and/or Battery/Negligent Hiring exclusion under Coverage A also applies to the Medical Payments coverage, Founders has no duty to provide coverage under the Medical Payments provisions. Accordingly, this Court grants summary judgment to Founders regarding the Estate's counterclaim.

### V. Conclusion

Based on the foregoing discussion, it is

**ORDERED** that judgment be entered in favor of Plaintiff, Founders, as to Count I of its Second Amended Complaint for Declaratory Judgment (Doc. 31), finding that that Plaintiff has no duty to either defend or indemnify 802 East Whiting under the Commercial General Liability provisions of the Policy. Therefore, Plaintiff's motion for summary judgment (Doc. 39) as to Count I is **GRANTED** and the Estate's motion for summary judgment is **DENIED**. It is further

**ORDERED** that judgment be entered in favor of Defendants, 802 East Whiting and the Estate, as to Count II of Plaintiff's Second Amended Complaint for Declaratory Judgment (Doc. 31), finding that Plaintiff has a duty to defend the Underlying Action under the Assault and/or Battery Coverage Buy-Back endorsement of the Liquor Liability Coverage provisions. A determination of Plaintiff's duty to indemnify under the Assault and/or Battery Coverage Buy-Back endorsement is premature. Thus, 802 East Whiting's motion for partial summary judgment (Doc. 51) is **GRANTED**, and the Estate's motion for summary judgment (Doc. 49) is **GRANTED** in part and **DENIED** in part. And it is

**ORDERED** that judgment be entered in favor of Plaintiff as to the Estate's Counterclaim for Medical Payments Coverage (Doc. 28), as Plaintiff has no duty to provide coverage under the

Medical Payments provisions of the Policy. Therefore, Plaintiff's motion for summary judgment of the counterclaim is **GRANTED**.

Upon entry of the final judgment, the Clerk of the Court is directed to close this case.

**DONE AND ORDERED** in Chambers at Tampa, Florida, this 28th day of June, 2012.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record.